UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DANIELLE L.,

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

**DECISION AND ORDER**

1:23-CV-00809 EAW

# INTRODUCTION

Represented by counsel, plaintiff Danielle L. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. 6; Dkt. 11). For the reasons discussed below, the Commissioner's motion (Dkt. 11) is granted and Plaintiff's motion (Dkt. 6) is denied.

## BACKGROUND

Plaintiff filed her application for SSI on May 21, 2020. (Dkt. 3 at 20, 251-57).[1] In her application, Plaintiff alleged disability beginning September 28, 2018. (*Id.* at 20, 251). Plaintiff's application was initially denied on November 2, 2020. (*Id.* at 20, 71). At Plaintiff's request, a telephone hearing was held before administrative law judge ("ALJ") Arthur Patane on February 9, 2022 (*id.* at 42-51) and continued on June 6, 2022 (*id.* at 36-41). Plaintiff amended the alleged onset date to October 22, 2020. (*Id.* at 20, 263). On June 21, 2022, the ALJ issued an unfavorable decision. (*Id.* at 20-29). Plaintiff requested Appeals Council review, and her request was denied on June 14, 2023, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-11). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of N.Y.*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4

(the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

**I.    The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since October 22, 2020, the amended onset date. (Dkt. 3 at 23).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of Chiari malformation, status-post surgery; headaches; and asthma. (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of anxiety and asthma were non-severe. (*Id.* at 23-24).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 24). The ALJ particularly considered the criteria of Listing 1.00, 12.00, and 11.00 in reaching his conclusion. (*Id.* at 24-25).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels except:

> she would be off task 5% of the day; and must avoid large groups of people, meaning between 20 to 30 people in a group.

(*Id.* at 25).

At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 27). The ALJ further relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of cart attendant, lab equipment cleaner, and hand packager. (*Id.* at 28). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.*).

## II. The ALJ's Decision is Supported by Substantial Evidence and Free From Reversible Error

Plaintiff asks the Court to reverse the Commissioner's decision and remand for additional administrative proceedings, arguing that the ALJ's highly specific RFC concerning time off task was not supported by substantial evidence. (Dkt. 6-1 at 5-8). The Court is not persuaded by this argument for the reasons discussed below.

In determining Plaintiff's RFC, the ALJ assessed that Plaintiff would be off task for 5% of the day. (Dkt. 3 at 25). Plaintiff argues that the ALJ's opinion does not address how he arrived at the specific 5% determination. Therefore, Plaintiff argues, the determination is not supported by substantial evidence. In response, the Commissioner contends that the ALJ's reasoning can be gleaned from the opinion and substantial evidence supports the determination. The Court agrees with the Commissioner.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:

> An ALJ is prohibited from "playing doctor" in the sense that "an ALJ may not substitute his own judgment for competent medical opinion." This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotation and citation omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

That said, an RFC is not necessarily flawed simply because it contains highly specific limitations that are not formulated directly from a medical opinion. *Tiffany L. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0677 (WBC), 2021 WL 3145694, at *4 (W.D.N.Y. July 26, 2021) (citing *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-10 (2d Cir. 2020)); *see also Barry J. v. Comm'r of Soc. Sec.,* 725 F. Supp. 3d 312, 323 (W.D.N.Y. 2024) ("Accordingly, to the extent Plaintiff's argument is premised on the ALJ affording Plaintiff an off-task and absence limitation without a medical opinion assessing that very same limitation, that argument is not supported by the law, and courts have previously rejected it on several occasions."); *Michael K. v. Comm'r of Soc. Sec.*, No. 1:20-cv-1467-DB, 2022 WL 3346930, at *10 (W.D.N.Y. Aug. 12, 2022) ("[J]ust because there is no explicit opinion or subjective complaint that mirrors an RFC limitation does not mean there was an error."); *Jennifer O. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1474 (WBC), 2022 WL 2718510, at *4 (W.D.N.Y. July 13, 2022) ("[A]n RFC determination, even one containing highly specific limitations, is not fatally flawed merely because it was formulated absent a medical opinion.").

Furthermore, an ALJ does not commit reversible error where he gives a claimant the benefit of the doubt and assesses limitations more severe than those supported by the

medical evidence of record based on the claimant's subjective complaints. *See, e.g., Lynneesa M. v. Comm'r of Soc. Sec.*, No. 1:20-CV-00971 EAW, 2021 WL 4437184, at *5 (W.D.N.Y. Sept. 28, 2021) ("[This] is a case in which the ALJ, in fashioning the RFC, exercised her discretion to assess limitations more severe than those supported by the medical evidence of record in deference to Plaintiff's testimony. This does not constitute reversible error."); *Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) ("It appears the ALJ credited Plaintiff's testimony that she could not focus and was easily distracted, and assessed a more generous limitation of 5% off-task time. The fact that the ALJ afforded Plaintiff the benefit of the doubt and included a 5% off-task time limitation in the RFC assessment is not grounds for remand." (internal citation omitted)).

In this case, the medical opinion evidence of record did not provide express support for a finding that Plaintiff required a percentage of time off task.[2] Specifically, the ALJ

---

[2] Pursuant to the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id.* Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* § 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id.* § 416.920c(a). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(1). With

assessed the opinion of HongBiao Liu, M.D., who conducted an examination on October 14, 2020. (Dkt. 3 at 465-68). At the examination, Plaintiff reported headaches twice a week with a pain level of 10/10 with sharp pressure. (*Id.* at 465). Dr. Liu noted that Plaintiff appeared to be in no acute distress and her head was normocephalic and atraumatic and she had normal, age-appropriate behavior. (*Id.* at 467-468). Dr. Liu opined that in his opinion, "[Plaintiff] may experience interrupted scheduled activities due to the headaches. She has had no asthma attack and no emergency room visit for asthma. Her last inhaler use was a couple of years ago, and currently stable. Otherwise, [Plaintiff] can participate in social, educational, and entertainment activities that is appropriate for age group." (*Id.* at 468). The ALJ found Dr. Liu's opinion that Plaintiff may experience interruptions unpersuasive because "[t]he term 'may' is vague and he does not described [sic] the nature or length of the 'interruptions.'" (*Id.* at 27).

---

respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id.* § 416.920c(b). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. § 416.920c(b)(2). The ALJ may—but is not required to—explain how he considered the remaining factors. *Id.* Plaintiff does not ascribe error to the ALJ's assessment of the medical opinion evidence.

The ALJ also assessed the opinions of the State agency medical consultants, B. Stouter, M.D., and I. Sinha, M.D. (*Id.* at 52-70, 72-92). Dr. Stouter opined that Plaintiff had no exertional, postural, manipulative, visual, or communicative limitation but did have environmental limitations, in that she should avoid concentrated exposures to noise, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards. (*Id.* at 64-65). Dr. Sinha affirmed Dr. Stouter's conclusions. (*Id.* at 86-88). The ALJ found these opinions, which did not contain any limitations of time off task, to be generally persuasive, except for the respiratory irritant limitations, which he concluded were not supported by the medical records, Plaintiff's statements during examination, or her testimony at the hearing. (*Id.* at 27).

The ALJ addressed Plaintiff's hearing testimony wherein she testified that due to her Chiari malformation, she sustains pressure in her head and neck which affects her ability to focus or engage in activities. (*Id.* at 46). She stated that the pain can require her to lay down in the dark for hours to feel better and can happen three to four times a week. (*Id.* at 47). The ALJ found that Plaintiff's impairments could be expected to cause her alleged symptoms but the statements concerning their intensity, persistence, and limiting effects were not entirely consistent with the evidence of record. (*Id.* at 26).

In conclusion, the ALJ stated:

> I have given consideration to the entire record as a whole. In accordance to 416/945, consideration was given to all of the claimant's medically determinable impairments which we were made aware of, including any medically determinable impairment that was found to be "non-severe". Based upon a review of the evidentiary record, having considered the above opinions, and having heard testimony at hearing, I conclude that the claimant has the residual functional capacity to perform a full range of work at all

> exertional levels but with the following nonexertional limitations: she would be off task 5% of the day; and must avoid large groups of people, meaning between 20 to 30 people in a group.

(*Id.* at 27).

The Court cannot conclude that this determination was error. The ALJ explained that he weighed Plaintiff's subjective complaints against the medical assessments and gave Plaintiff the benefit of a minimal off task limitation. Plaintiff's arguments that the ALJ erred amount to nothing more than a disagreement with how the ALJ weighed the evidence, which is within his province to do. *See Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."). This is particularly true where, as here, the restrictions imposed by the ALJ were more generous than those contained in medical opinions and constituted credit to Plaintiff's own testimony. *Rebecca B. v. Comm'r of Soc. Sec.*, No. 22-CV-00631-HKS, 2025 WL 90625, at *7 (W.D.N.Y. Jan. 14, 2025) ("It also bears noting that the sit/stand and off-task limitations included in the ALJ's RFC were more restrictive than some of the medical opinions, which weighs against remand."); *see also Mary Diane K. v. Comm'r of Soc. Sec.*, 541 F. Supp. 3d 270, 276 (W.D.N.Y. 2021) ("It was further not erroneous for the ALJ to partially credit Plaintiff's testimony regarding her own limitations and assess more restrictive manipulative and environmental limitations than those identified by the consultative examiners."); *Hamilton v. Comm'r of Soc. Sec.*, No. 19-CV-770 (JLS), 2020 WL 5544557, at *6 (W.D.N.Y. Sept. 16, 2020) ("[The plaintiff] essentially argues that the ALJ was wrong to accept portions of her testimony regarding her limitations, which were not covered in a medical source opinion. But this

does not constitute reversible error.").

Accordingly, the Court finds that the RFC for a full range of work with additional restrictions, including the 5% time off task, to be supported by the record, and that the ALJ sufficiently explained how he arrived at this assessed limitation. Remand is not required on this basis.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 11) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 6) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:     March 21, 2025
           Rochester, New York